# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-00166-CR-W-DGK |
| | ) | |
| GIOVANI CRISOLIS-GONZALEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND VERDICT

On January 10, 2012, the grand jury charged Defendant Giovani Crisolis-Gonzalez in a five count Second Superseding Indictment ("the Indictment") (doc. 100). Count One alleged that between January 1, 2010 and May 14, 2010, Defendant conspired to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Count Two alleged that on or about May 14, 2010, Defendant knowingly possessed, with intent to distribute, 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Count Three alleged that on May 14, 2010, Defendant knowingly carried a firearm in furtherance of a drug trafficking crime. Count Four alleged that on May 14, 2010, Defendant was an alien illegally and unlawfully in the United States in possession of a firearm. Count Five alleged that on May 14, 2010, Defendant, an alien, was found in the United States after having been removed on or about December 12, 2008, without the consent of the Attorney General or his successor.

This case was originally scheduled for a jury trial, but the day of trial Defendant chose to have the Court be the finder of fact. Defendant subsequently executed a written waiver (doc. 116) of his right to a jury trial pursuant to Federal Rule of Criminal Procedure 23(a). After

confirming on the record that this was Defendant's informed and voluntary decision, and that the Government consented, the Court approved the request and proceeded with a bench trial.

After the day long trial, the Court retired to deliberate. In the course of its deliberations, the Court observed an apparent defect in Count Three of the Indictment and ordered the parties to submit supplemental briefing. In order to simplify any appellate proceedings, the Government moved to dismiss (doc. 119) Count Three. That motion is hereby GRANTED. With respect to the remaining counts, the Court now issues its written verdict pursuant to Rule 23(c), finding Defendant GUILTY of Counts One, Two, Four, and Five.

## Discussion

The Government bears the burden of proving each element of a count beyond a reasonable doubt. *United States v. O'Brien,* 130 S. Ct. 2169, 2174 (2009). Failure to prove any element beyond a reasonable doubt requires the Court to acquit. *See id.*

In support of its case, the Government called six witnesses and offered 79 exhibits, all of which were admitted. Defendant admitted no exhibits, but testified in his own behalf. Defendant's strategy was to contest Count Three only; in his opening statement he conceded his guilt on Counts One, Two, Four, and Five.[1]

The Court has considered all the evidence and testimony, and its findings are summarized below. Any failure to mention a particular piece of evidence or testimony should not be construed as a comment on its probative value, as the Court reached its verdict based on the entire record. As an overview, however, the Court notes it found the testimony of all witnesses to be credible, with the exception of portions of Defendant's testimony, which the Court

---

[1] After Defendant's opening statement, the Court asked defense counsel, "Ms. Morgan, based on your opening statement, Count III is the only contested count in this; is that true?" Defense counsel replied, "That's correct, your honor."

occasionally found to be self-serving, inconsistent with the physical evidence, and inconsistent with the testimony of other, more credible witnesses.

### A. The Court finds Defendant guilty of Count I.

The crime of conspiracy to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) has four elements: (1) that two or more persons reached an agreement or came to an understanding to distribute methamphetamine; (2) that the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; (3) that at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and (4) the agreement or understanding involved 50 grams or more of methamphetamine. 8th Cir. Model Crim. Jury Instr. § 6.21.846A.1 (2011).

The relevant evidence adduced at trial was as follows. During a search of the Defendant's bedroom on May 14, 2010, federal agents found an electronic scale, plastic baggies, a handgun, and approximately 113 grams of methamphetamine, all of which are hallmarks of a conspiracy to distribute methamphetamine. Special Agent Jose Covarrubias of Immigration and Customs Enforcement interviewed the Defendant that same day. During the interview, the Defendant admitted he had "ice," the slang term for methamphetamine, in his bedroom; that he had purchased it the day before; and that his intention was to both use it and sell it. The Defendant also told Special Agent Covarrubias that he obtained the drugs from an individual named "Cocho" with whom he had been dealing drugs for three months; that in a good month he would sell approximately three quarters of a pound of methamphetamine; and that he worked with multiple customers who liked the quality of the methamphetamine he dealt. Defendant also

confessed that he purchased the drugs he received the day before on credit, and that he intended to sell some of the methamphetamine to a customer named Belinda or Linda.

Lucretia Weber, a forensic chemist for the Drug Enforcement Agency, testified about her analysis of the methamphetamine. She testified that the total amount of methamphetamine recovered in the Defendant's bedroom was approximately 113 grams. Of this, approximately 111 grams was one hundred percent pure, which Special Agent Tim Ditter, a Criminal Investigator with Homeland Security, testified is unusually pure. Finally, during his own testimony, the Defendant admitted to working with others to sell drugs to support his wife and infant child.

This evidence proves all four elements beyond a reasonable doubt. It establishes that Defendant had at least an understanding with "Cocho" and others, such as Belinda or Linda, to distribute approximately 111 grams of methamphetamine; that he voluntarily entered this understanding at the time it was reached because he wanted to earn money; that he knew the purpose of the agreement; and that the agreement or understanding involved approximately 111 grams of methamphetamine, which is more than 50 grams. Consequently, the Court finds Defendant is guilty of Count I.

### B. The Court finds Defendant guilty of Count II.

This same evidence proves Defendant's guilt on Count II. The elements of the crime of possession of 50 grams or more of a mixture or substance containing methamphetamine with intent to distribute has four elements: (1) the defendant possessed methamphetamine; (2) the defendant knew that he possessed methamphetamine; (3) the defendant intended to distribute the methamphetamine; and (4) the amount the defendant possessed with intent to distribute was 50 grams or more of methamphetamine. 8th Cir. Model Crim. Jury Instr. § 6.21.841A.1 (2011). In

his interview with Special Agent Covarrubias the Defendant established beyond a reasonable doubt that he knew the substance found in his bedroom was methamphetamine; that he possessed it; and that he intended to distribute it by selling it. The chemist's testimony proves beyond a reasonable doubt that the Defendant possessed more than 50 grams of methamphetamine. Thus, the Defendant is guilty of Count II.

### C. The Court finds Defendant guilty of Count IV.

The crime of being an alien illegally in the United States who knowingly possessed a firearm has three elements: (1) the defendant was an alien illegally and unlawfully present in the United States; (2) the defendant knowingly possessed a firearm while he was an alien illegally and unlawfully present in the United States; and (3) the firearm was transported across a state line at some time during or before the defendant's possession of it. 18 U.S.C. § 922(g)(5)(A); *see* 8th Cir. Model Crim. Jury Instr. § 6.18.922B (2011).

The evidence adduced at trial proves each of these elements beyond a reasonable doubt. Special Agent Covarrubias testified that Immigration and Customs Enforcement ("ICE") keeps in the ordinary course of business a file on each foreign born national that it encounters. The Defendant's ICE file established that he had been deported from the United States on December 12, 2008, and that he had never received approval to reenter the United States, thus he was unlawfully present in the United States on May 14, 2010.

Special Agent Tim Canon from the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified about the handgun found during the search on May 14, 2010, which the Defendant in his own testimony admitted owning. Special Agent Canon testified the gun was a Hi-Point firearms model JHP 45 ACP pistol, serial number XR4110770, which was manufactured by Haskell Manufacturing Incorporated in Lima, Ohio. Because the gun was

manufactured in Ohio, it therefore travelled in interstate commerce before the Defendant possessed it in St. Joseph, Missouri on May 14, 2010. Thus, the Court finds Defendant guilty on Count IV.

### D. The Court finds Defendant guilty of Count V.

Finally, Count Five of the Second Superseding Indictment charges the Defendant with being an alien found in the United States after having been deported from the United States in violation of 8 U.S.C. § 1326(a). There are four elements to this crime: (1) the defendant was an alien at the time alleged, in this case, May 14, 2010; (2) the defendant had previously been deported from the United States; (3) the defendant was found in the United States; and (4) the defendant had not received the consent of the proper legal authority to reapply for admission to the United States. 8 U.S.C. § 1326(a); 10th Cir. Model Crim. Jury Instr. No. 2.05 (2011).

As discussed above, Special Agent Covarrubias' testimony established that the Defendant had previously been deported from the United States on December 12, 2008, and that he never received approval to reenter the United States when he was arrested in St. Joseph, Missouri on May 14, 2010. Special Agent Tim Ditter, Criminal Investigator with Homeland Security Investigations, testified that when he interviewed the Defendant after his arrest, the Defendant admitted that he was a citizen of Mexico, that he had previously been deported from the United States, and that he was in the United States illegally. Consequently, the Defendant is guilty of Count V.

## Conclusion

The Government's motion to dismiss Count Three (doc. 119) is GRANTED. The Court finds the Defendant GUILTY of Counts One, Two, Four, and Five.

The Office of Probation and Pretrial Services shall conduct a presentence investigation after which the Court will set a sentencing date.

**IT IS SO ORDERED.**

Dated: April 19, 2012  /s/ Greg Kays
GREG KAYS,
UNITED STATES DISTRICT JUDGE